We are of the opinion therefore that the Court of Appeal erred in the conclusion

it reached and in reversing the judgment of the trial court, and, for the reasons stated it is now ordered that the judgment under review be and the same is hereby reversed and set aside and it is further ordered that the judgment of the district court be and it is hereby affirmed.

60 So.2d 889

**JONES et al. v. SHREVEPORT LODGE NO. 122, B. P. O. E.**

No. 40488.

July 3, 1952.

Rehearing Denied Oct. 7, 1952.

Hussey & Smith, Shreveport, for plaintiffs-appellants.

Edward Rightor, Willis C. McDonald, New Orleans, Earl E. James, Oklahoma City, Okl., Charles B. Emery, Elmo P. Lee, Jr., Garrett & Pleasant, Shreveport, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiffs, M. Carl Jones, Carl Wiley Jones, James M. Jones and Martha Jones Rice, are appealing from a judgment rejecting their demands against Shreveport Lodge No. 122, Benevolent and Protective Order of Elks, Inc., to enforce specific performance of a contract to sell certain property, decreeing the nullity of the said contract, and ordering the cancellation of its recordation from the parish records.

The defendant, a Louisiana nonprofit corporation empowered to buy and sell real estate, is the owner of a tract of land measuring 150′ x 150′ in the heart of the Shreveport business area on which is situated its lodge home. According to the allegations of the petition, at a regular business meeting of the defendant in April, 1950, a Building Committee was appointed to formulate plans for the construction of a new Elks home and to negotiate a sale of the old lodge building and grounds to provide funds for the enterprise; on May 27, 1950, plaintiffs made a written offer to purchase the property for $325,000 in cash, subsequently raised the offer to $350,000 with the agreement that defendant was to have the use of

the two top floors of the old lodge building for eighteen months, free of rent, while the new house was being constructed; in separate meetings held on July 20, 1950, the defendant's Board of Trustees, Board of Directors, and members of the Lodge, assembled in regular business meeting, approved recommendations of the Building Committee and adopted resolutions to accept the plaintiffs' offer at the price and on the terms thereof, and to purchase an adjoining tract for the construction of their new home, authorizing their Exalted Ruler (President) and Secretary to sign all deeds necessary to carry out these purposes; pursuant to this authorization, on July 22, 1950, the plaintiffs and the defendant entered into a written contract by which the plaintiffs were to acquire the property, but the defendant has failed and refused to consummate the sale although the plaintiffs have been at all times ready, willing and able to purchase at the agreed price, and have made tender in cash.

The defendant, without attacking the integrity or the motives of its officials in executing the above instrument, in their answer admitted that the Building Committee was appointed but denied that it was authorized to negotiate a sale of the property, and, resisting the demands of plaintiffs, contended that the officials acted pursuant to an illegal and invalid resolution (and therefore their action was not binding on the corporation), in that no notice of the purpose to present a resolution recommend-

ing the sale of the property was given to the membership prior to the meeting, as required by the laws of this State—the only notice sent having been the following: "Special Notice—Important. Leon Hendrick, Chairman of the Building Committee, announces that at this week's meeting the plan and report of the Building Committee relative to a proposed New Elks Home will be presented. This will be your only notice and since this is a very important matter, *you are requested to be present.*" In the alternative, and only in the event the Court should find that the resolution was legally adopted, the defendant averred that the action of the officers in executing the contract was in conflict with the specific terms of the resolution.

The trial judge, in well-considered reasons for judgment, held that the failure of the defendant corporation to notify its members (the governing body) that the meeting of July 20, 1950, had for its purpose a discussion and consideration of the sale of the property, struck with nullity the contract to sell entered into by its officers with the plaintiffs, in view of the provisions of LSA–R.S. 12:113, that a corporation "may * * * sell * * * its immovable property, only if a resolution so authorizing has been approved by the governing body of the corporation at a regular or special meeting, *convened after notice of its purpose.* * * *" (Italics ours.)

The plaintiffs argue, both orally and in brief (as they did below), that the notice of

the meeting of July 20, 1950, was a sufficient compliance with the above-quoted law, particularly when the fact is considered that it was generally known by the membership that many plans had been suggested for acquiring a new and better lodge home, to be constructed on a portion of their land or on property to be acquired, and the Building Committee had been appointed for the specific purpose of studying the various proposals and recommending a concrete plan—which necessarily involved a sale of a portion or all of the property. Arguing further that a defense by a corporation that its officers had no authority to act should be looked upon with disfavor, particularly when those officers are prominent members of the Bar and certified in the instrument that they were duly authorized to execute the contract, plaintiffs stress the point that of the eleven members presently opposing the sale, six participated in the meeting, thereby waiving any lack of formality as to notice, and the vote of the other five would not have changed the result of the vote taken; that no officer or trustee has complained that the meeting was not properly assembled, though they were present in court, and those who did testify upheld the validity of the contract; and contend that the reading and approval at a subsequent meeting of the minutes of the July 20 meeting, after prominent publicity of the contract in the local press, had the effect of ratifying the previous action.

■ It is a universally accepted principle of law that a corporation, owing its existence to the will of the sovereign and deriving its powers by grant from that source, can function only in accordance with the law creating it. 19 C.J.S., Corporations, §§ 934, 941; 13 Am.Jur., Corporations, Secs. 20, 739, 746. Broadly speaking, corporate acts may be performed only in the manner prescribed by the applicable statute, and unless this mode is observed by the corporate body, the corporation is not bound. 19 C.J.S., Corporations, §§ 947b, 960. Where a statute prescribes the manner in which notice of a meeting of the corporation shall be given, compliance with its requirements is essential to a valid notice. 13 Am.Jur., Corporations, Sec. 477. A person dealing with a corporation is chargeable with notice of limitations and restrictions imposed by statute, is generally bound to know whether or not the person who assumes to represent the corporation and to act in its name is authorized to do so, and therefore cannot hold the corporation responsible for the agent's unauthorized contract. 19 C.J.S., Corporations, § 997. See Peirce v. New Orleans Bldg. Co., 9 La. 397, 29 Am.Dec. 448; Jeanerette Rice & Milling Co. v. Durocher, 123 La. 160, 48 So. 780; T. P. Ranch Co. v. Gueydan & Riley, 148 La. 455, 87 So. 234; Rome v. New River Lodge No. 402, F. & A. M., La.App., 197 So. 174.

■■ Application of these principles to the facts of this case confirms the correct-

ness of the judgment of the district court. The defendant is a fraternal organization whose efforts (according to its answer) "are devoted to charity and to quickening the spirit of American patriotism." While a large number of persons, through altruistic motives, become members of such organizations, it is a matter of common knowledge that a small percentage attend the meetings and run its affairs; and while such action on their part is laudable and unselfish, a devotion of their time, energy and ability to the faithful conduct of the association's business, nevertheless statutory provisions regarding notice of proposed action are designed to insure to the members an opportunity to attend and protect their interests. The Legislature, in adopting LSA–R.S. 12:113, prescribed that a meeting to consider business of this extraordinary character could be convened *only* after notice of its purpose. The statutory requirements are sacramental; failure to comply therewith renders the resolution under consideration void and of no effect, and strikes with nullity the ensuing contract.

The plaintiffs' contention that the reading and approval of the minutes at the following (August) meeting constituted ratification of the resolution is totally without merit, since such holding would circumvent the very purpose of the statutory requirement. Moreover, within a few days of this so-called ratification, a notice was sent to the membership that a resolution would be presented at the next meeting (September 14)

authorizing the sale of the property to plaintiffs for the agreed price, at which meeting the resolution was defeated by a vote of 72 to 15—thus demonstrating that at the first opportunity to record their wishes after being apprised of the proposal, the membership rejected it by an overwhelming majority.

The conclusion we have reached here makes it unnecessary to give consideration to the other defenses urged in argument and brief.

For the reasons assigned, the judgment appealed from is affirmed.